1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

8
9
10

| | |
|---|---|
| LOUIS ACOSTA, | Case No. 1:20-cv-01209-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR LEAVE TO AMEND BE GRANTED; THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS MCNEAL, MOORE, MONTOYA, AND WELCH FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS AND HIS ADA CLAIM AGAINST THE CDCR; AND THAT ALL OTHER CLAIMS BE DISMISSED |
| v. | |
| K. MCNEAL, et al., | |
| Defendants. | |
| | (ECF No. 24) |
| | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |
| | ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Louis Acosta ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This action is proceeding "on Plaintiff's Eighth Amendment claims against defendants K. McNeal, H. Montoya, and R. Moore for deliberate indifference to his serious medical needs."  (ECF No 21, p. 2).

On June 11, 2021, Plaintiff filed a motion for leave to amend, along with a proposed

1

amended complaint.  (ECF No. 24).  Plaintiff seeks to add defendants, to add additional factual allegations, and to add a claim under the Americans with Disabilities Act ("ADA").

For the reasons that follow, the Court will recommend that Plaintiff's motion for leave to amend be granted; that this action proceed on Plaintiff's Eighth Amendment claims against defendants McNeal, Moore, Montoya, and Welch for deliberate indifference to his serious medical needs and his ADA claim against the CDCR; and that all other claims be dismissed.

Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

## I.      LEAVE TO AMEND

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]his policy is to be applied with extreme liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008).  "However, liberality in granting leave to amend is subject to several limitations.  Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citations and internal quotation marks omitted); see also Waldrip, 548 F.3d at 732.

Plaintiff seeks to add defendants, to add additional factual allegations, and to add a claim under the ADA.  Given the stage of this case (the Court has authorized service, but no defendants have appeared), and that there is little indication that Plaintiff filed his motion in bad faith,[1] the Court will recommend that Plaintiff's motion for leave to amend be granted and will screen Plaintiff's proposed amended complaint.

## II.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

---

[1] The Court notes that Plaintiff is attempting to add the CDCR as a defendant and to add an ADA claim, but did not mention either of these additions in his motion for leave to amend.

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III.    SUMMARY OF PLAINTIFF'S PROPOSED AMENDED COMPLAINT

There was a seat request that was submitted at California Correctional Institution ("CCI") by the Classification and Parole Representative for the week of October 28, 2019. This was done before Plaintiff was handed over to the transportation officers on October 30, 2019.

All of Plaintiff's medical and physical limitations are well documented with the California Department of Corrections and Rehabilitation's medical department, and with

3

outside orthopedic doctors as well.  Plaintiff was prescribed certain transportation accommodations by these physicians to accommodate Plaintiff's "fractured-femur-left knee-nonunion."  Also, prior to the non-union fracture, Plaintiff had a total knee replacement surgery on his left leg, which still causes pain and mobility issues.

The doctors also issued Plaintiff durable medical equipment ("DME") to help Plaintiff with his mobility issues.  Plaintiff was issued a cane, knee braces, a back lumbar brace, a wrist brace, and a yellow vest that says, "Mobility Impaired."  The DME alerts staff that an inmate has medical issues.

Plaintiff had his DME on at all times prior to and during the transport from CCI to Ironwood State Prison ("ISP").

Per the California Department of Corrections and Rehabilitation ("CDCR") Strategic Offender Management System ("SOMS"), Plaintiff had a verified disability placement, with a disability code of DLT (requires relatively level terrain).

On the current verification from the SOMS Disability Placement Program Verification ("DPPV") system, Plaintiff's transportation accommodations and housing restrictions were documented and written within the comments section of Plaintiff's Statewide Transportation Seat Request for the week of October 28, 2019.  A transportation accommodation listed that Plaintiff required "special cuffing" and a "transport-van with lift" to accommodate Plaintiff's current medical issues and physical limitations.  His housing restrictions were "BOTTOM BUNK, []GROUND FLOOR-LIMITED STAIRS."

CCI staff and transportation staff failed to indicate, or notice, or provide any of these accommodations.

Plaintiff's transfer from CCI to ISP was initiated by the physicians at CCI due to Plaintiff's overriding health care treatment needs and because he required special placement due to his disability requirements of DLT.  The doctor at CCI filled out a CDCR 1845 Form and a CDCR 7410 Form.  These forms went over all of Plaintiff's medical issues and accommodations.  They noted that Plaintiff should be transported in a van with a lift.  The forms were forwarded to defendant Classification and Parole Representative N. Welch, who by

4

his own admission submitted Plaintiff's seat request for Plaintiff's transport to ISP.  However, he failed to indicate the accommodations that were prescribed to Plaintiff for transport.  If defendant Welch had afforded Plaintiff the proper accommodations that were written in the request for transfer, Plaintiff would not have suffered the severe pain from being placed on a bus and being shackled and restrained for two days.

Plaintiff notified CCI Receiving and Release personnel of his disability and his transportation requirements.  On October 28, 2019, Plaintiff was notified that CCI staff submitted a statewide transportation seat request in accordance with CDCR's SOMS DPPV system, that the request had been granted, and that it would be in effect when transportation arrived.  As required by Plaintiff's doctors and the medical department, Plaintiff's accommodations were displayed on the transportation request.

On October 30, 2019, as Plaintiff was being prepared for transfer from CCI to ISP, Plaintiff had on and in his possession all of his DME.  Plaintiff was prepared for transfer by defendant Sergeant McNeal.  Defendant McNeal went through and made sure that Plaintiff had all of his DME on.  Then Plaintiff noticed that he was about to be transported on a bus that did not meet or comply with his disability requirements.  Plaintiff vehemently and repeatedly voiced his concerns to defendant McNeal, who appeared to be in charge of the transport.  Despite Plaintiff's objections, defendant McNeal handcuffed Plaintiff and put him in line to get shackled (legs) on the bus.

Plaintiff continued to voice his concerns over his treatment and his transportation requirements.  He was ignored, so he voiced his concerns to defendant Montoya and defendant Moore.  Once again his pleas for help went unanswered.

Immediately after being brought into the bus, defendant Moore restrained Plaintiff with leg shackles.  Defendant Montoya then placed Plaintiff in a small cage on the bus that had two seats and another inmate inside.  After defendant Montoya closed the cage, Plaintiff was left in an extremely restrictive seating position.

Plaintiff began to experience severe pain and discomfort, particularly in his left knee where he suffers from "a fractured femur-distal non-union."  Plaintiff also suffers from chronic

pain from a total knee replacement surgery he had done on his left knee.

Plaintiff began to voice his concerns to other prisoners on the bus.  No one could do anything for him, so Plaintiff continued to complain to all three defendants about his pain and discomfort.  However, Plaintiff was ignored once again.  Plaintiff was not offered any type of accommodation that might have eased his pain.  There is no talking when the bus is in motion. Plaintiff was ignored by these three defendants for several hours.

The trip from CCI to Wasco State Prison (where there was a layover) lasted twelve hours and included stops at three other prisons.  For these twelve hours Plaintiff suffered some of the most excruciating and debilitating pain he has ever known.  This pain and suffering could have been avoided had Plaintiff been afforded proper accommodations, which were prescribed to him by physicians and doctors.

Upon arrival at Wasco State Prison, Plaintiff was unshackled, strip searched, and put in a holding cell.  He was then escorted to a lay-over cell for six hours.  The next morning Plaintiff was again strip searched, shackled, handcuffed, and placed back on the same bus by the same three defendants.  Plaintiff was again placed in a restrictive seating position.  Again Plaintiff's pleas for the proper disability accommodations went unanswered.

The journey from Wasco State Prison to ISP lasted over twelve hours and included two more stops.  The two stops allowed transport personnel to provide accommodations that could have helped to alleviate Plaintiff's pain and suffering.  His left knee was throbbing.  Plaintiff again suffered greatly due to Defendants' disregard for his condition and failure to provide him with the accommodations that were prescribed to him.

Plaintiff arrived at ISP at approximately 20:30 in overwhelming pain and discomfort, having had to endure this ordeal for over twenty-four hours over a two-day period.  Plaintiff had been cuffed and uncuffed, leg shackled and unshackled, and strip searched on four different occasions.  He was seated in a cramped and painful position.  He had to seek immediate medical attention upon his arrival at ISP on October 31, 2019.

Defendants McNeal, Moore, and Montoya were given copies of the CDCR 1845 Form and the CDCR 7410 Form that Plaintiff's doctor filled out.  However, these defendants

6

disregarded Plaintiff's transportation accommodations.

Plaintiff was told he could not refuse the transport from CCI to ISP because it was an overriding health care treatment transfer.  This transportation was a necessity and mandatory for Plaintiff's health care.  Plaintiff was told that refusing would bring administration down on him.  Plaintiff was told that if he refused to get on the bus it would be used against him as a refusal of medical treatment, and he would lose or be stripped of his medical status, along with all of his DME and accommodations.

Plaintiff also alleges that the CDCR has programs and services for transporting inmates with disabilities, and that the CDCR provides ADA accessible vehicles to transport inmates whose disabilities necessitate specialized transportation.  The CDCR violated its procedure as to Plaintiff, who is a disabled prisoner that required an accessible vehicle for transportation.  Plaintiff seeks monetary damages from the CDCR.

Plaintiff also alleges that this is not the first time Plaintiff has been subjected to inadequate treatment by the CDCR as to his disability issues.  Prior to the suit, Plaintiff was transferred from Salinas Valley State Prison to CCI with no disability accommodations.  Plaintiff was then advised by an auditor and the medical department that CCI was not an appropriate placement due to his DPPV DLT.  Plaintiff then had to be transported from CCI to ISP.

Plaintiff brings claims against defendants McNeal, Moore, Montoya, Welch, and CDCR for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  Plaintiff also brings an ADA claim against the CDCR.

## IV.   ANALYSIS OF PLAINTIFF'S PROPOSED AMENDED COMPLAINT

### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

7

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

### B.  Eleventh Amendment Immunity

"The Eleventh Amendment bars suits which seek either damages or injunctive relief

8

against a state, an arm of the state, its instrumentalities, or its agencies.  However, under *Ex Parte Young*, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities."  Fireman's Fund Ins. Co. v. City of Lodi, Cal., 302 F.3d 928, 957 n. 28 (9th Cir. 2002) (citations and internal quotation marks omitted).  Additionally, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).  Finally, the Eleventh Amendment does not bar suits seeking damages under Title II of the ADA.  Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792 (9th Cir. 2004) ("Our precedent clearly commands the conclusion that the State is not entitled to Eleventh Amendment immunity under Title II of the ADA.").

Plaintiff is seeking money damages from the CDCR, and does not appear to be seeking prospective declaratory or injunctive relief.  As the CDCR is a state agency, it is entitled to Eleventh Amendment immunity from Plaintiff's Eighth Amendment claim.

However, as the Eleventh Amendment does not bar suits seeking damages under Title II of the ADA, the CDCR is not entitled to immunity from Plaintiff's ADA claim.

### C.  Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of

and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff has sufficiently alleged that certain accommodations were prescribed to him by physicians and doctors, that defendants McNeal, Moore, Montoya, and Welch knew that Plaintiff needed to be provided with these accommodations,[2] and that defendants McNeal,

---

[2] Circumstantial evidence, such as evidence of obviousness, can be used to show subjective knowledge. Farmer, 511 U.S. at 842-43 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of').  For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge

Moore, Montoya, and Welch failed to provide the accommodations, which led to Plaintiff experiencing severe pain.

Thus, based on the allegations in the complaint, Plaintiff has sufficiently alleged that he had serious medical needs, that defendants McNeal, Moore, Montoya, and Welch knew of the serious medical needs, and that defendants McNeal, Moore, Montoya, and Welch failed to respond to Plaintiff's serious medical needs. Accordingly, the Court finds that Plaintiff's Eighth Amendment claims against defendants McNeal, Moore, Montoya, and Welch for deliberate indifference to his serious medical needs should proceed past screening.

### D. Americans with Disabilities Act

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

"The term "disability" means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C).

The ADA does not provide a basis to sue government officials in their individual capacities. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA….").

"To recover monetary damages under Title II of the ADA …, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (footnote omitted). Deliberate indifference is the appropriate standard to apply in determining whether intentional

---

of the risk.' Brief for Respondents 22.") (alterations in original) (footnote omitted).

11

discrimination occurred.  Id.  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139.  "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness." Id.

As discussed above, Plaintiff has alleged that he was entitled to accommodations, that certain employees of the CDCR knew that he was entitled to accommodations, and that multiple CDCR employees failed to provide the accommodations.  Additionally, as discussed above, Plaintiff has sufficiently alleged that certain CDCR employees were deliberately indifferent.

Plaintiff also alleged that the CDCR has ADA accessible vehicles, that Plaintiff was not allowed to be transported in one of those vehicles, and that this was not the first time the CDCR failed to accommodate Plaintiff's disabilities when transporting him.

Based on Plaintiff's allegations, and liberally construing Plaintiff's complaint, the Court will allow Plaintiff's ADA claim to proceed past the screening stage.

## V.    RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for leave to amend (ECF No. 24) be GRANTED;

2. The Clerk of Court be directed to docket Plaintiff's proposed amended complaint (ECF No. 24, pgs. 4-23);

3. This case proceed on Plaintiff's Eighth Amendment claims against defendants McNeal, Moore, Montoya, and Welch for deliberate indifference to his serious medical needs and Plaintiff's ADA claim against the CDCR;

4. All other claims be dismissed;

5. The Clerk of Court be directed to add defendant Welch and the CDCR on the Court's docket;

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **June 16, 2021**                                    /s/ Erica P. Grosjean
                                                                  UNITED STATES MAGISTRATE JUDGE